## THE STATE ex rel. MILLER, Collector, Appellant, v. SHRYACK.

### Division One, February 10, 1904.

I. **Taxation:** BANK STOCK. The back taxbill recites that it is for taxes "on the personal property assessed against and in the name of" a certain bank, and the petition alleges that "there were assessed and levied upon the moneys, capital stock, furniture and fixtures and personal property of said bank" the taxes for which a stockholder is sued. *Held*, that there being no valid assessment of taxes against the stockholder, no judgment could be rendered against him for taxes assessed against the bank.

2. ———: ———: ASSESSMENT: STATUTE OF 1895. ' Under the statute of 1895 the real estate of a bank, whether a domestic or national bank, should be assessed against the corporation, the personal property of the corporation should not be assessed at all, and the shares of stock should be assessed against the stockholders (as heretofore) in their individual names, but the corporation should pay the tax assessed against the stockholders and recover it from them.

Appeal from Johnson Circuit Court.—*Hon. Wm. L. Jarrott*, Judge.

AFFIRMED.

*J. W. Suddath* for appellant.

(1) On dissolution of corporation creditors may sue one or all of the stockholders for debts owing by corporation, and each stockholder is liable to the extent of his unpaid stock. Sec. 2519, R. S. 1899; Wag. Stat. p. 293, sec. 22; sec. 745, R. S. 1879; Bank v. Gallaher, 43 Mo. App. 482; McGinnis v. Barnes, 23 Mo. App. 413; Choteau v. Dean, 7 Mo. App. 210; 3 Thomp. on Corp.,

sec. 3468; VanCleve v. Berkey,   143 Mo. 127; State
Savings Assn. v. Kellogg, 52 Mo. 583; Bank v. Bank,
107 Mo. 133; State Savings Assn. v. Kellogg, 63 Mo.
540; Hauser v. Thompson, 56 Mo. App. 85; Sears v.
Mo. Mort. Loan Co., 56 Mo. App. 122; Ford v. Railroad,
52 Mo. App. 453; Kehlor v. Lademann, 11 Mo. App. 552;
Donnelly v. Mulhall, 12 Mo. App. 139; Donnelly v.
Hodgson, 14 Mo. App. 554; McGinnis v. Kortkamp, 24
Mo. App. 378; Bittner v. Lee, 25 Mo. App. 559; Lewis,
Admr., v. St. Charles County, 5 Mo. App. 225. (2) The
liability of stockholders is joint and not several.   Perry
v. Turner, 55 Mo. 218.   (3)   Directors are trustees, on
dissolution, and are jointly and severally liable to cred-
itors for all funds that pass through their hands.   Sec.
2513, R. S. 1889; Ford v. Railroad, 52 Mo. App. 452;
Alberger v. Bank, 123 Mo. 319; Bradley v. Reppell, 133
Mo. 552; McCoy v. Farmer, 65 Mo. 250; Morrill v. Rail-
road, 96 Mo. 717; Landis v. Saxton, 105 Mo. 490.   (4)
Collector may sue on personal taxes after January 1,
when same become delinquent.   Sec. 7626, R. S. 1889;
Laws 1895, 245.   (5)  Collector may sue and obtain per-
sonal judgment for personal taxes under section 7626,
Revised Statutes 1889. State ex rel. v. Hoyt, 123 Mo.
346; State ex rel. v. Snyder, 139 Mo. 556. (6) In such
cases a back tax bill is prima facie evidence of correct-
ness of assessment, levy, etc. State ex rel. v. Hoyt, 123
Mo. 348; State ex rel. v. Mastin, 103 Mo. 508. (7) Per-
sonal tax is a debt. Laws 1895, p. 245; sec. 7626, R. S.
1889; sec. 9246, R. S. 1899; State ex rel. x. Hoyt, 123
Mo. 357; State ex rel. v. Snyder, 139 Mo. 556.   (8)   In-
formality of assessment does not invalidate tax.   Sec.
7563, R. S. 1889.   (9)   Assessment made according to
law.   Laws 1895, p. 242; Laws 1891, pp. 195-96; sec.
7538, R. S. 1889.   (10)   Mere irregularities in assess-
ment of property does not render assessment void.
State ex rel. v. Tob. Co., 140 Mo. 218; State ex rel. v.
Cummings, 151 Mo. 49.   (11)   Irregularity in making
out tax books does not avoid  assessment.   State may

show assessment properly made and taxes not paid, and that makes good case. State ex rel. v. Bank, 144 Mo. 381.

*James A. Kemper* for respondent.

(1) The State in collecting taxes can only pursue the remedy provided by statute. Carondelet v. Picot, 38 Mo. 125; McPike v. Pen, 51 Mo. 63; State v. Goodnow, 80 Mo. 271; State ex rel. v. Hays, 139 Mo. 549; State ex rel. v. Railroad, 149 Mo. 645. (2) Former stockholders of a dissolved banking corporation are only liable for bona fide debts of the corporation left unpaid at the time of its dissolution. R. S. 1889, sec. 2519; Cable v. McCune, 26 Mo. 371; Cable v. Gaty, 34 Mo. 573. (3) A tax is not a debt nor in the nature of a debt. Carondelet v. Picot, 38 Mo. 125; State v. St. Louis County Court, 13 Mo. App. 52; Corn v. Cameron, 19 Mo. App. 573; State ex rel. v. Snyder, 139 Mo. 549; Hanson Co. v. Gray, 80 Mo. 175; Stafford Co. v. Bank, 30 Pac. 22; Water Co. Bell, 36 Pac. 1102; Camden v. Allen, 26 N. J. L. 398; Pierce v. Boston, 3 Metc. 520; Water Co. v. Commonwealth, 12 S. W. 300. (4) And if not a debt then it does not come within the purview of the statute. R. S. 1889, sec. 2519; R. S. 1899, sec. 987. (5) The shares of stock are the personal property of the stockholder and the corporation has not and can not have any interest in them. R. S. 1899, sec. 965; Vanstone v. Goodwin, 42 Mo. App. 39; Watson v. Printing Co., 56 Mo. App. 145; State v. Railroad, 37 Mo. 265; 2 Thomp., sec. 2810. (6) Bank stock or shares of stock held in banks can not be assessed as the property of the bank. Valle v. Zeigler, 84 Mo. 219; Springfield v. Bank, 87 Mo. 445; State ex rel. v. Catron, 118 Mo. 284; Relfe v. Ins. Co., 11 Mo. App. 377; Ogden v. St. Joseph, 90 Mo. 527; Stanberry v. Jordan, 145 Mo. 375; Lionberger v. Rowe, 43 Mo. 67; Bank v. Meredith, 44 Mo. 502; State v. Railroad, 77 Mo. 219; Assn. v. Lightner, 42 Mo. 412,

and 47 Mo. 393; State ex rel. v. Bank, 160 Mo. 640. (7) Banks are not liable for taxes accruing on shares of bank stock held therein. Relfe v. Ins. Co., 11 Mo. App. 377; State ex rel. v. Catron, 118 Mo. 284; Springfield v. Bank, 87 Mo. 445; Valle v. Zeigler, 84 Mo. 218; State ex rel. v. Bank, 160 Mo. 640. (8) Taxes on shares of stock held in banking corporations do not constitute debts of the banks and can not be made so by assessing them against the banks. Relfe v. Ins. Co., 11 Mo. App. 377; State ex rel. v. Catron, 118 Mo. 284; State ex rel. v. Bank, 160 Mo. 640. (9) Such taxes constitute a debt of the shareholders, who alone are liable for the payment of the same. State ex rel. v. Catron, 118 Mo. 284; State ex rel. v. Bank, 160 Mo. 640. (10) But shareholders are liable for taxes on their respective shares of stock only when they are properly assessed and levied. R. S. 1899, sec. 987. (11) Shareholders liable only for a debt of the bank left unpaid at the time of the dissolution. R. S. 1899, sec. 987. (12) The petition in this case alleges and the tax bill shows that the shares of stock in the Farmers' and Merchants' Bank were assessed against the bank as the property of the corporation, and not against the shareholders. So the prima facie case which the tax bill would otherwise make out for the plaintiff as against the said bank is overcome when it appears that the said tax bill is based on an invalid assessment. State ex rel. v. Cunningham, 153 Mo. 642; State ex rel. v. Bank, 160 Mo. 647.

MARSHALL, J.—This is an action, under section 987, Revised Statutes 1899, by the collector of Johnson county to collect from the defendant, as a stockholder, director and trustee in liquidation of the Farmers' and Merchants' Bank, of Warrensburg, the sum of $385.11, the taxes for 1899, that were assessed against the bank. After the usual and necessary averments in ordinary tax cases, the petition alleges that on April 24, 1899, the

bank dissolved, leaving these taxes unpaid, and that the defendant was a director and a stockholder, owning ten shares of the par value of one hundred dollars each, and that he received one thousand dollars as his share of the capital stock upon the dissolution, and that as such stockholder and trustee the sum of thirty thousand dollars of the money of the bank passed through his hands to the stockholders, and hence under the statute he is liable for these taxes. The answer admits that the bank was a corporation organized under the laws of this State, and that the defendant was a director and stockholder as charged, and then denies generally the other allegations in the petition. Upon the trial, the plaintiff introduced the back tax bill which was as follows:

"Back Tax Bill.

"Warrensburg, Mo., April 9, 1900.

"State of Missouri,

"County of Johnson, ss.

"I, Franklin Miller, collector of the revenue within and for the county of Johnson, in the State of Missouri, do hereby certify that the following amounts of back taxes remain delinquent in favor of the several funds for the several years, on the personal property assessed against and in the name of Farmers' and Merchants' Bank, as hereinafter set forth, to-wit:

Year 1899.

| Valuation | $20,115 | |
|---|---|---|
| State tax | | $ 50.29 |
| Co. Tax | | 70.41 |
| Co. Int. and Sinking F'd. | | 00.00 |
| Wbg. Twp. Int. Tax | | 60.35 |
| Com. Road Tax | | 30.18 |
| Comm. School Tax | | 144.83 |
| Ch. House Tax | | 00.00 |
| Total | | $356.06 |
| Penalty | | $ 14.24 |

Collector's Com.                                14.81

Total                .                      $385.11

"In witness whereof, I have hereunto set my hand at the city of Warrensburg, in said county and State, this 9th day of April, 1900.

"FRANKLIN MILLER,

"Collector of the revenue within and for the county of Johnson, State of Missouri."

The case was tried upon the following agreed statement of facts:

"For the purpose of the trial of this case, and to save time, it is admitted by the defendant that Franklin Miller was at the time of the filing of the petition in this case and now is the legally commissioned, qualified and acting collector of the revenue within and for said county of Johnson and State of Missouri; that on the 24th day of April, 1899, the said corporation—the Farmers' and Merchants' Bank—dissolved; that at the time of the dissolution of the said corporation—the Farmers' and Merchants' Bank—there were moneys and funds on hand belonging to said corporation, subject to the payment of its debts, and after the payment of all debts, except this alleged debt, for distribution among the stockholders, in the aggregate sum of thirty thousand dollars; and that after the payment of all debts against said corporation, except this, there was the said sum of $30,000 for distribution among the stockholders; (that said sum passed through the hands of the board of directors of said corporation, of which said board said defendant, M. C. Shryack, was at said time a member, and one of the trustees in winding up the business of said corporation; that said corporation and this defendant has at all times failed to pay and still fails to pay the alleged taxes sued for in this action) and that the alleged taxes here sued for have never been paid. Employment of attorney as alleged in petition admitted."

The defendant demurred to the evidence, the court sustained the demurrer, the plaintiff took a nonsuit, with leave, and after proper steps appealed to this court.

## I.

Counsel for defendant says that the case "was and is defended upon the theory that an assessment of the shares of stock can not be made against the bank in which they are held, for the reason that they are not the property of the bank but belong to the individual share-holders."

The assessment in this case is not preserved in the record. The back tax bill however recites that it is for taxes "on the personal property assessed against and in the name of Farmers' and Merchants' Bank." And the petition alleges that "there were assessed and levied upon the moneys, capital stock, furniture and fixtures and personal property, of said Farmers' and Merchants' Bank." etc., the taxes sued for.

It is apparent, therefore, that the assessment and levy was direct upon the money, capital stock and personal property of the bank, in the name of the bank, and not upon the shares of stock of the bank in the names of the stockholders.

The question, therefore, is whether such an assessment and levy is valid under the laws of this State.

A brief review of the development of the law in this State as to the taxation of property owned by banks and other corporations will serve to explain the law as it now stands upon the statutes of this State.

By sections 27 and 28 of chapter 2, p. 134, Laws (Adj. Sess.) 1865, it was provided as follows:

"Sec. 27. Persons owning shares of stock in banks and other incorporated companies, taxable by law, are not required to deliver to the assessor a list thereof; but the president, or other chief officer of such corporation, shall deliver to the assessor a list of all shares of stock

held therein, and the names of the persons who hold the same.

"Sec. 28. The taxes assessed on shares of stock embraced in such list shall be paid by the corporations respectively, and they may recover from the owners of such shares the amount so paid by them, or deduct the same from the dividends accruing on such shares; and the amount so paid shall be a lien on the shares respectively, and shall be paid before a transfer thereof can be made."

These sections were a part of the act approved March 19, 1866, which revised the whole revenue laws of the State. The law remained the same until the act approved March 30, 1872 (Laws 1871-2, pp. 80 to 137) was enacted. That act also revised the revenue laws of the State. Section 27 of the act of 1866, was omitted and section 35 (p. 90) was enacted in lieu thereof, as follows:

"Sec. 35. The property of manufacturing companies and other corporations named in chapter sixty-nine of the General Statutes of Missouri, and of all other corporations, the taxation of which is not otherwise provided for by law, shall be assessed and taxed as the property of individuals. Persons owning shares of stock in banks or any joint stock institution or association doing a banking business, or any insurance company, whether of fire, marine, life, health, accident or other insurance, incorporated under or by any law of the United States or of this State, are not required to deliver to the assessor a list thereof; but the president or other chief officers of such corporation shall, under oath, deliver to the assessor a list of all shares of stock held therein, and the names of the persons who hold the same, and shall also state the actual cash value of such stock and all the property belonging to such corporations. In estimating the value of such stock and property, the officer making the same shall estimate and in-

clude all reserve funds, undivided profits, premiums or earnings, and all other values belonging to such corporations, which cash value shall be assessed and taxed as other personal property.  Insurance companies or any corporations doing business on the mutual plan without capital stock, shall make like returns of the net value of all assets or values belonging thereto, which net value · shall be assessed and taxed in like manner.    Private bankers, brokers, money brokers and exchange dealers shall in like manner make a return of all moneys or values of any description invested in or used in their business, which shall be taxed as other personal property; Provided, however, that the license hereafter required to be paid by such bankers, brokers and dealers, in addition to such taxes, shall not exceed one hundred dollars per.annum.''

Section 28 of the act of 1866, requiring the corporation to pay the tax assessed against the shareholder, was carried into the act of 1872 without change and became section 36 of that act.

The law as thus enacted remained the same and passed into all the revisions until and including the Revised Statutes of 1889, where section 35 appears, *in ipsissimis verbis,* as section 7538, and section 36 appears as section 7540, Revised Statutes 1889, and that section has remained the same ever since and is section 9155, Revised Statutes 1899.

By the act of April 1st, 1891 (Laws 1891, p. 195), section 7538, Revised Statutes 1889, was repealed, and a new section, with the same number, enacted in lieu thereof, as follows: ·

''Sec. 7538.   The property of manufacturing companies and other corporations named in article eight, chapter forty-two, and of all other corporations, the taxation of which is not otherwise provided for by law, shall be assessed and taxed as the property of individuals. Persons owning shares of stock in banks, or any joint stock institution or association doing a banking business,

or any insurance company, whether of fire, marine, life, health, accident or other insurance, incorporated under or by any law of the United States or of this State, shall not be required to deliver to the assessor a list thereof, but the president or other chief officer of such corporation, institution or association shall, under oath, deliver to the assessor a list of all shares of stock held therein and the names of the persons who hold the same, with the face value thereof [and shall also deliver to the assessor a complete statement of all reserve funds, undivided profits, premiums or earnings, and all other values belonging to such corporations, companies, institutions or associations.   And such statement of shares of stock, together with the statement of reserve funds, undivided profits, premiums or earnings and other values so delivered to or furnished the assessor, shall, for the purposes of taxation, be treated as that amount of money, less the taxable value of the real estate and fixtures, subject to the right of the parties in interest, to show the impairment of such shares of stock before the board of equalization.   Private bankers, brokers, money brokers and exchange dealers shall make like returns and be assessed and taxed thereon in like manner as herein above provided.]   Insurance companies or any corporations or associations doing business on the mutual plan without capital stock, shall make like returns of the net value of all assets or values belonging thereto, which net value shall be assessed and taxed in the manner hereinbefore provided; Provided, however, that the license hereafter required to be paid by any such bankers, brokers and dealers, in addition to such taxes, shall not exceed one hundred dollars per annum.''

The change made by this act is indicated by the words enclosed in the brackets which are here inserted for the purpose of making them conspicuous.

The substantial change thus made was to deduct the value of the real estate and fixtures from the esti-

mate of value to be placed on the stock, and to make the real estate and fixtures taxable against the corporation direct, and to permit the stockholders to show any impairment of the value of the stock.

Under these statutory provisions this court uniformly held that the personal property of a bank or other corporation (not otherwise provided for) should not be assessed against the bank, but that the stock should be assessed and taxed against the shareholders in their individual names, but that the corporation should pay the tax and recover it from the shareholder, and that only the real estate should be assessed against the bank. [City of Stanberry v. Jordan, 145 Mo. 371, and cases cited; State ex rel. v. Bank, 160 Mo. 640, and cases cited.]

Section 7538, Revised Statutes 1889, as amended by the act of 1891, was repealed and a new section, with the same number, enacted in lieu thereof, by the act of April 9, 1895 (Laws 1895, p. 242), as follows:

"Sec. 7538.   The property of manufacturing companies and other corporations named in article 8, chapter 42, and all other corporations, the taxation of which is not otherwise provided for by law, shall be assessed and taxed as [such companies or corporations in their corporate names].   Persons owning shares of stock in banks, or any joint stock institution or association doing a banking business, or any insurance company, whether of fire, marine, life, health, accident or other insurance, incorporated under or by any law of the United States or of this State, shall not be required to deliver to the assessor a list thereof, but the president or other chief officer of such corporation, institution or association shall, under oath, deliver to the assessor a list of all shares of stock held therein, and the face value thereof [the value of all real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings, and all other values belonging to such corporation, company, institution

or association; and such shares, reserved funds, undivided profits, premiums or earnings, and all other values so listed to the assessor, shall be valued and assessed as other property, at their true value in money, less the value of real estate, if any, represented by such shares of stock]. Private bankers, brokers, money brokers and exchange dealers shall make like returns, and be assessed and taxed thereon in like manner, as hereinbefore provided. Insurance companies, or any corporations or associations doing business on the mutual plan, without capital stock, shall make like returns of the net value of all assets or value belonging thereto, which net value shall be assessed and taxed in the manner hereinbefore provided: Provided, however, that the license hereafter required to be paid by any such bankers, brokers and dealers, in addition to such taxes, shall not exceed one hundred dollars per annum.     [It is hereby made the duty of the county clerk to include in his abstract of the assessor's books required to be sent to the State Auditor, valuation of all property assessed under this section, under the head of 'corporate companies,' and in addition thereto he shall make out from the lists delivered to the assessor as above provided, and send the same to the State Auditor to be laid before the State Board of Equalization, on or before the 20th day of February in each year, an abstract of the assessment of all corporations or persons doing a banking or insurance business in his county, showing the name of each bank and insurance company, the number of shares of stock and their face value, amount of reserve funds, undivided profits, premiums or earnings, and all other value, together with the assessed value thereof, also the value of real estate deducted as above provided and the assessed value of such real estate as shown by the real estate book.]  Approved, April 9, 1895.''

The words in brackets show the changes thus made in the act of 1891, which are as follows: First, the act of 1891 required that the property of corporations ''*shall*

*be assessed and taxed as the property of individuals."*
Whereas the act of 1895 required that the property of
corporations "shall be assessed and taxed *as such com-
panies or corporations in their corporate name."* Sec-
ond: The act of 1891 required the president or other
chief officer to deliver to the assessor "a list of all shares
of stock held therein *and the names of the persons who
hold the same."* Whereas the act of 1895 omitted the
words, "and the names of the persons who hold the
same." Third: The act of 1891 provided that the tax-
able value of the real estate *and fixtures,* should be de-
ducted from the value of the property to be taxed against
the shareholders, and should be taxed against the cor-
poration direct, thus making a part of the personal prop-
erty taxable against the corporation. Whereas, the act
of 1895 omitted the words, "and fixtures" and thus pro-
vided that only the value of the real estate should be
taxed against the corporation, leaving the value of the
fixtures, like all the other personal property, to be taxed
against the shareholders. This is further emphasized
by the additional provision, enclosed in brackets, which
was added to the law by the act of 1895 at the end of the
section. The act of 1895 was carried into the Revision
of 1899 and is section 9153 thereof.

The question, therefore, is whether the act of 1895
has so changed the law as to require all the property of
a corporation to be assessed direct to the corporation in
the corporate name instead of having the shares assessed
to the shareholders personally and only the real estate
assessed to the corporation.

At first blush it might seem that the act of 1895 in-
tended to make such a change. The fact that the first
sentence of the act of 1891 (and of all prior laws) re-
quired the property of corporations to be assessed and
taxed as the property of individuals, and that the act of
1895 struck out the words "as the property of individ-
uals," and substituted therefor the words "as such com-
panies or corporations in their corporate name," and

that the act of 1895 struck out the provision of the act of 1891 which required the president of the corporation to furnish "the names of all persons who hold," stock therein, might, without further analysis of the act, furnish some foundation for the contention that such was the intention of the act of 1895. But in spite of those changes in the phraseology of the law, a closer scrutiny of the act of 1895 will clearly demonstrate that such was not the intention of the lawmakers, or that if it was they wholly failed to carry that intention into effect or to so provide.

Several conclusive reasons prove that this is so. In the first place, if the act of 1895 intended to have all corporate property assessed direct to the corporation, the lawmakers would have said so in so many words, and would have stopped with the first sentence of that act. If such had been their intention no possible reason or sense can be discerned for enacting the balance of the act. If the property was meant to be assessed against the corporation, the provision requiring the president to furnish a list of the shares of stock and their face value, would be perfectly useless. So likewise would be the provision requiring the value of the real estate to be deducted. For in such event, the real estate as well as the personal property would be assessed against the corporation direct, and who were the stockholders, or what was the value of their shares, would be of no moment. The fact, therefore, that these provisions were left in the act of 1895 clearly shows that the Legislature did not intend to make the change suggested.

But there are other cogent reasons for believing that the Legislature did not so intend. It will be observed that prior to the act of 1891 nothing was said in the law about deducting the value of the real estate and assessing the value thereof against the corporation direct; and that the act of 1891 provided for the first time that the value of the real estate *and fixtures* should be so deducted; and that the act of 1895 omitted the provis-

ion as to the fixtures and left it so that only the value of the real estate should be deducted.

There was a reason for such changes, and it was this: Section 5219, Revised Statutes of the United States (1878), under which alone a State has any power to tax national banks, provides as follows: ''Nothing herein shall prevent all the shares in any association from being included in the valuation of personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the Legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other monied capital in the banks of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of the associations from either State, county or municipal taxes, to the same extent, according to its value, as other real property is taxed.''

Prior to the passage of this act the federal Supreme Court had uniformly held that no State could tax any property or share of the national bank, because such banks were instruments of the national government.

The Supreme Court of the United States holds that there is property in shares of stock which is distinct from the property of the corporation. [People v. Comrs., 4 Wall. 244; Bank v. Tennessee, 161 U. S. 134.]

The section of the Federal laws quoted has undergone adjudication by the Supreme Court of the United States in many cases, but for the purposes of this case it is only necessary to refer to Aberdeen Bank v. Chehalis Co., 166 U. S. 440; Owensboro National Bank v. Owensboro, 173 U. S. 664; and Third National Bank of Louis-

ville v. Stone, 174 U. S. 432. It is sometimes said that there is a conflict between the first and the last two cases cited, but a critical examination of those cases shows that it is not only a mistake to so construe them, but that the Supreme Court of the United States did not so regard them, for it was not even considered necessary in deciding the second case to refer to or discuss the first case, and the third case is based solely on the second.

The rule announced in those cases is that: "This section, then, of the Revised Statutes is the measure of the power of a State to tax national banks, their property or their franchises. By its unambiguous provisions the power is confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank. Any State tax therefore which is in excess of and not in conformity to these requirements is void."

Accordingly a tax upon the personal property of a national bank to the bank and not upon the shares of stock in the names of the shareholders was held to be void.

That court further holds that the *form* as well as the substance of the statute must be followed, and that no equivalents are permissible.

The underlying reason of the rule is that the capital and much of the property of a national bank is exempt from taxation by the Federal laws, and the shares of stock and the real estate is not exempt, but may be taxed by the express permission of Congress.

This clearly shows why the lawmakers in Missouri have always provided for taxing the shares of stock in a corporation in the names of the shareholders instead of laying the tax direct upon the property of the corporation. This also explains why the act of 1891 provided for deducting the value of the real estate and fixtures and assessing them against the bank. The lawmakers were trying to arrange it so as to conform to the national banking act. They made a mistake in assessing fixtures

as well as real estate against the bank, and one of the manifest purposes of the act of 1895 was to correct the mistake and make the State statute conform to the Federal statute so as to tax the real estate alone to the corporation and to lay a tax on the shares of the stockholders in the names of the stockholders, and not to tax the *personal* property of the bank at all.

It is too clear to admit of doubt that this was the purpose and intention of the act of 1891 as well as of the act of 1895. The lawmakers were trying to arrange it so as to reach the taxes on national banks authorized by the Federal statute quoted. Any other construction placed upon this act would have the effect to exempt all real estate and shares of stock in a national bank from taxation, and clearly the Legislature had no such intention.

In spite, therefore, of the change of the language employed in the first sentence of the law, the conclusion is inevitable that the true meaning of the act of 1895 is, that the real estate shall be assessed against the corporation, the personal property of the corporation shall not be assessed at all, and the shares of stock shall be assessed in the names of the shareholders. Thus the domestic corporations and the national banks are put on the same basis, there is no discrimination and the letter and form and substance of the power conferred by the Federal statute are observed. The bank in question is a domestic bank, but the law is the same as to it that it is as to national banks.

After the assessment is thus made against the shares of stock in the names of the shareholders, it is legal to make the bank pay the tax and recover it from the stockholders. [Sec. 9155, R. S. 1899; National Bank v. Commonwealth, 9 Wall. 353; Aberdeen Bank v. Chehalis Co., 166 U. S. 440.]

The tax in this case was against the property of the bank, of every kind, direct, and not as the statute re-

quires.   The assessment therefore was void.   The judgment of the circuit court is right and is affirmed.   All concur; *Brace, P. J.,* in the result.