THE STATE EX REL. WILLIAM A. WYATT, Collector of Revenue of Mississippi County, v. S. L. CANTLEY, State Finance Commissioner, in Charge of Peoples Exchange Bank of Charleston, Appellant.—26 S. W. (2d) 976.

Court en Banc, April 8, 1930.

*George W. Kirk* and *J. C. McDowell* for appellant.

*Joslyn & Boone* for respondent.

BLAIR, J.—Suit for taxes in the Circuit Court of Mississippi County. From a judgment in favor of plaintiff in the sum of

$2,395.18 and an order making said judgment a preferred claim, defendant appealed. Our appellate jurisdiction attaches because defendant (appellant) is a state officer and also because a construction of the revenue laws appears to be involved.

Respondent was collector of revenue of Mississippi County. The Peoples Bank of Charleston was a banking corporation under the laws of this State. In compliance with Section 12775, Revised Statutes 1919, its cashier made and delivered the bank's return for the year 1926 in the form hereafter more fully stated. On December 1, 1926, and after the foregoing return had been made, the assets and property of the Peoples Bank were taken over by the Peoples Exchange Bank of Charleston, which at the same time and as part consideration therefor assumed all of the liabilities and obligations of the Peoples Bank.

On May 10, 1927, the Peoples Exchange Bank was closed and taken over by appellant Cantley, as finance commissioner. On July 8, 1927, under authority of Section 11716, Revised Statutes 1919, appellant's deputy bank commissioner in charge gave the statutory notice fixing November 15, 1927, as the last day for the presentation of claims against the Peoples Exchange Bank. Respondent collector did not present his claim for taxes due from the shareholders of the Peoples Bank within the time thus fixed. The special deputy bank commissioner mailed no notice to respondent collector as provided by Section 11716. It does not appear from the agreed statement of facts that the name of respondent as collector appeared as a creditor upon the books of the bank; but no point seems to have been made on such fact.

On June 20, 1928, respondent collector made demand on appellant finance commissioner for the payment of said claim and thereafter filed suit thereon and asked judgment for same and that such judgment be allowed and classified as a preferred claim against the assets of the Peoples Exchange Bank in the hands of the finance commissioner. The result of this suit has already been stated.

The first of the three contentions made by the appellant finance commissioner is that the claim for taxes is barred by the statute of limitations. Section 11716 reads as follows:

"When the commissioner shall have taken possession of such corporation or private banker, and shall have determined to liquidate its affairs, he shall notify all persons who may have claims against such corporations or banker to present the same to him and make proper proof thereof within four months from the date of said notice and at a place specified therein, and shall specify in said notice the last date for presenting said proofs. He shall cause said notice to be mailed to all persons whose names appear as creditors upon the books of the corporation or banker. He shall also cause said notice to be inserted weekly in such newspapers as he may direct for three consecutive months, the first

insertion thereof to be published more than ninety days before the last day fixed in said notice for presenting proof of claims. After the date specified in such notice as the last date for presenting proofs of claims the commissioner shall have no power to accept any claim,

There is no question that under like circumstances the claim of a private person, firm or corporation against the Peoples Exchange Bank would have been barred for failure of claimant to file such claim with the deputy bank commissioner on or before November 15, 1927. [Bowersock Mills & Power Co. v. Citizens Trust Co. (Mo. App.), 298 S. W. 1049; Cold Spring Lodge v. Cantley (Mo. App.), 18 S. W. (2d) 111.] Respondent seemingly agrees to that proposition, but contends that it has no application to a claim for taxes, because the State cannot be barred by limitation, unless the statute defining the limitation expressly so provides, and Sections 11716 and 11720 do not so provide.

In State ex rel. Ziegenhein v. Tittmann, 119 Mo. 661, 24 S. W. 1032, it was said:

"It is a general proposition of law that statutes for the limitation of remedies do not apply to actions brought by the State, in the exercise of its sovereign authority, unless clearly so provided. That rule is of common law origin, and was frequently expressed by the maxim, no time runs against the king. Its reason for existence as part of American jurisprudence is found in the inherent injustice of permitting the public right or title to be lost by the neglect or wrong of the agents of the State."

See also State ex rel. Karrenbrock v. Mississippi Valley Trust Co., 209 Mo. 472, l. c. 493, 108 S. W. 97, and 37 C. J. 710, Sec. 28.

Appellant has cited no authority to the contrary. He contents himself by suggesting the hardship and confusion which would ensue if the court should hold that claims for taxes may not be barred for failure to comply with the provisions of section 11716 and thus the liquidation of failed banks be indefinitely delayed. There can be no doubt of the general rule that the State is not thus barred in the absence of its statutory consent. Appellant's argument might be persuasive if addressed to the Legislature. But it is the duty of the courts to enforce the law as the Legislature has written it and to enforce the common law where the Legislature has not decreed otherwise. Appellant's appeal to the limitation of Section 11716 cannot be sustained.

As respondent's claim could not be barred for failure to file the claim as required by said section within the time fixed by the deputy bank commissioner in charge, it was for like reasons not necessary for respondent to allege in his petition and prove at the trial that the claim upon which the suit was instituted was duly and timely filed with the deputy bank commissioner and that sixty

days had elapsed since the expiration of the time for filing said claim and that it had not been approved, as required by said section to be alleged and proven in respect to ordinary claims.

The second contention of plaintiff is that respondent's claim for taxes is based upon an illegal and void assessment and that the tax cannot be collected for that reason. It is contended that the assessment was made against the Peoples Bank and not against its shareholders. If this is true, the assessment must be held void. The following cases cited by appellant sufficiently exemplify the rule, to-wit: Lionberger v. Rowse, 43 Mo. 67, l. c. 79; First National Bank of Hannibal v. Meredith, 44 Mo. 500, l. c. 503; Springfield v. First National Bank of Springfield, 87 Mo. 441, l. c. 445; State ex rel. Mahan v. Merchants Bank, 160 Mo. 640, l. c. 648, 61 S. W. 676; State ex rel. Miller v. Shryack, 179 Mo. 424, l. c. 440, 78 S. W. 808.

In the agreed statement of facts upon which this case was tried, it is stipulated that the cashier of the Peoples Bank made out and delivered to the assessor the statement required by Section 12775, Revised Statutes 1919, giving a list of all the shareholders of the bank, the number of shares held by each and the total outstanding shares of the bank, together with the value of the bank's real estate, and all reserve funds, undivided profits, premiums and earnings and all other values belonging to the bank. Concerning the subsequent steps taken by the taxing and collecting officers of Mississippi County, it is then stipulated that "the duly qualified and acting Assessor of Mississippi County, Missouri, for the year 1927, extended in the assessment book for that year under the heading 'Peoples Bank' the names of all the shareholders of said Peoples Bank, together with the number of shares owned by each shareholder, and the total number of shares was shown to be 1,000; that no valuation was extended on the assessment book against the names of the several shareholders, nor of the total face value of the 1,000 shares of stock, but the total valuation by the assessor was shown as $123,348.06, which was the total face value of said 1,000 shares of stock, and all reserve funds, undivided profits, premiums or earnings and all other values as shown in the assessment list returned by the cashier of the said Peoples Bank; that the value of the real estate as shown on said assessment book was $42,535; that the value of the real estate was deducted from the aforesaid sum of $123,348.06, leaving a balance of $80,813.06; . . . that taxes were extended as set forth in the tax bill attached to plaintiff's petition, which tax bill is attached hereto and becomes a part of this agreed statement of facts; that the said tax was extended in the tax book for 1927 against the said Peoples Bank in the form as shown in the assessment book and in the tax bill in identically the same manner, under the same heading and with the same words and figures as it was in the assessment book as set out above; that the

assessment book was duly presented to the board of equalization of said county and duly and formally passed on by the said board of equalization and the tax books were duly and legally certified to the collector of revenue of Mississippi County.''

It thus appears that the tax bill and the assessment both show the names of all the shareholders and the number of shares owned by each and that the total number of shares was one thousand and that the total assessment of personal property was $80,813.06. It was a mere mathematical calculation to determine what the total assessment against the thousand shares of stock and against the number of shares owned by each shareholder amounted to.

In the cases cited by appellant, where the assessment was held to be void, it does not appear that the names of the individual shareholders and the number of shares owned by each were set out, either in the assessment or the tax bill and the tax bill in each case was made out against the bank and the intention of the assessor to assess against the shareholders the value of the shares owned by them did not appear upon the face of the assessment or tax bill.

Section 12801, Revised Statutes 1919, is as follows:

''No assessment of property or charges for taxes thereon shall be considered illegal on account of any informality in making the assessment, or in the tax lists, or on account of the assessments not being made or completed within the time required by law.''

We think the assessment and the tax list in this case come within the purpose and intent of this statute. The facts that the name of the bank was inserted as owner instead of the individual shareholders and that the value assessed against each shareholder was not set down opposite his name were mere informalities which are not sufficient to render the assessment illegal.

The case of State ex rel. Donnell v. People's Bank of De Soto (Mo. Sup.), 263 S. W. 205, is almost identical with the case at bar, so far as the sufficiency of the assessment is concerned. There the value of the shares owned by each shareholder and the amount of the tax extended thereon were omitted. In holding that these omissions came within the saving grace of Section 12801, WALKER, J., said:

''The facts stated in the return of the president of the bank to the assessor, and by the latter incorporated in the assessment book, leave no room for conjecture as to the aggregate amount of the tax required to be paid on these shares by the bank for all of the shareholders. It is in the payment of this amount, and not in the face value of each owner's shares, that the assessor and the bank are interested. This having been paid, the proportionate amount due by each shareholder to the bank, for such payment, is a matter readily to be determined, by a simple arithmetical calculation, from the facts expressly stated. In the determination

of same, or in the payment of the amount due by each shareholder to the bank, the State has no concern. It may be admitted that a literal or complete compliance with the statute (Section 12775) requires that the face value of each owner's shares be stated, but whether stated or not, this value is the same, and its omission cannot be construed as prejudicial to the owner, but as an irregularity which in no wise affects his liability or increases his burden. As to the bank, it has no just ground of complaint, whether the face value of each owner's shares be stated or not, if the aggregate value of the shares be correctly stated, concerning which there is no question; its liability to pay the taxes on same is fixed, with, of course, the consequent right to recover for such payment from the shareholders. If it be contended that no assessment has been made because of the omission of the value of each owner's shares, a complete answer to this contention is found in the fact that the basis from which to determine the taxes due is found in the return made of the aggregate value of the shares. It is upon this amount that the Legislature has seen fit to levy the tax. Valuations subordinate to, and forming a part of, this aggregate amount which are susceptible of definite ascertainment, are not essential to the validity of the assessment.''

To the same effect are State ex rel. Brown v. Wilson, 216 Mo. 215, l. c. 286, 115 S. W. 549, and cases; State ex rel. Teare v. Dungan, 265 Mo. 353, l. c. 265, 177 S. W. 604; State ex rel. Bay v. Citizens State Bank, 274 Mo. 60, 202 S. W. 382.

In view of the foregoing decisions of this court and particularly the case of State ex rel. Donnell v. People's Bank of De Soto, supra, we are constrained to hold that the assessment and tax bill in this case were not void and that the contention of appellant to the contrary must be overruled.

This brings us to the final contention of appellant which is, ''that the assessment and payment of this personal tax by the corporation itself is a mere matter of convenience, the banking  corporation serving as the agent of the stockholders, which agency ceased when the banking corporation closed its doors and discontinued the banking business, said corporation not being responsible for any taxes falling due after the date of the closing of such institution.''

Whether or not, as between the bank and its shareholders, the bank is their mere agent for the payment of their taxes, the statute in plain terms makes the bank directly responsible for the payment of the taxes assessed against the shareholders. The duty of the bank to pay the tax, if it has assets with which to pay it, is a personal liability of the bank to the tax collector. [State ex rel. Bay v. Citizens State Bank, supra, pages 68 to 71.] It affirmatively appears from the agreed statement of facts that the Peoples Bank of Charleston had ample assets to pay the taxes and that

said assets were transferred to the Peoples Exchange Bank in consideration of the agreement of the latter bank to assume the liabilities of the former bank. Under the facts in this case the Peoples Exchange Bank must be held liable for the payment of the taxes assessed against the shareholders of the Peoples Bank. [State ex rel. Bay v. Citizens State Bank, supra.]

The reasons for the existence of the statute requiring a failed or closed bank to pay the tax assessed against its shareholders out of its assets in the hands of its liquidating officer or of the successor bank, which takes over its assets and assumes its liabilities, are, to say the least, just as controlling as they are where the bank is a live and going concern when the assessment against its shareholders is made.

Assuming, as appellant contends, that the collector may proceed against the individual shareholder, if he can reach him, and may collect from him directly the tax on his shares assessed against him, it does not at all follow that the collector may not assert his claim against the assets of the bank made liable for the tax in the first instance and collect the tax from any person, corporation or officer in possession of such assets and standing in the shoes of the bank whose shareholders were assessed.

Finding no error in the proceedings had in the trial court or in the conclusions reached by it, its judgment should be and is affirmed. All concur.