STATE of Missouri ex rel. PURDY REORGANIZED SCHOOL DISTRICT NO. II, BARRY COUNTY, Missouri, Appellant,

v.

Chester SNIDER, Clerk of the County Court of Barry County, Missouri, Respondent.

No. 9051.

Springfield Court of Appeals, Missouri.

Aug. 2, 1971.

Motion for Rehearing or for Transfer to the Supreme Court Denied Sept. 17, 1971.

Michael Baker, Baker & Campbell, Springfield, for appellant.

Royle Ellis, Emory Melton, Cassville, for respondent.

HOGAN, Judge.

This case comes to us on appeal from the trial court's refusal to issue a peremptory writ of mandamus compelling the respondent, as county clerk, to extend the tax books to include certain realty which appellant claims is properly within its boundaries.

The facts in the case were stipulated, but with reference to a large, rather complicated map of the school districts involved, and several exhibits. It would be impractical to try to include the map itself, and we undertake to summarize the stipulated facts by the use of plats taken from the map, which we append as exhibits in the opinion. The area generally involved consists of about four sections of land in the northwest part of Barry County. It is the tract outlined in exhibit one, which, it will be seen, is divided into northern and southern parts. The dotted line which divides the tract irregularly from southeast to northwest is the present boundary between the relator (Purdy School District) and the Cassville School District. The relator claims that the southern part of the tract is lawfully within its boundaries, and this action was brought to require extension of the tax books to include that land as part of its territory. The Cassville District lies generally southeast of the tract outlined in exhibit one; the relator, Purdy School District, lies generally to the north.

The whole tract outlined on exhibit one was originally part of a school district known as the Butterfield School District, which was annexed by the Cassville School District in May 1951. Thereafter, residents of that area petitioned the board of directors of the Cassville District for a change of boundary under the statute then applicable, § 165.170, RSMo (1949), V.A. M.S. The petitioners (12 in all) requested that the boundary between the Purdy District and the Cassville District be changed by permitting annexation of the following described area to the relator's predecessor in interest, the Purdy Consolidated School District No. 8:

Beginning at the southeast corner of the Southwest Quarter of Section 30, Township 24, Range 28, Barry County, Missouri; thence north one-fourth mile; thence west one-quarter mile; thence one and one-fourth mile north to the northeast corner of the Northwest Quarter of the Northeast Quarter of Section 24, in said township and range; thence west one and one-half miles to the northeast corner of the Northwest Quarter of the Northwest Quarter of Section 23; thence south one-half mile; thence east one-quarter mile; thence south one-half mile; thence west one-quarter mile; thence south one-quarter mile; thence west one-half mile; thence south three-fourths of a mile to place of beginning.

Plotting of the land described in this petition—as we have undertaken to show by exhibit two—indicates that the scrivener undertook to describe a tract similar in outline to the tract outlined in exhibit one, but inspection of the description call by call shows that: (a) if the point of beginning is taken as stated, that is, as being in Township 24 North, Range 28 West, and the description is followed counterclockwise, a tract of land lying six miles west of the intended tract is described, and such a de-

scription would place the land in another school district known as the Wheaton School District; (b) there is a gap between calls number two and three;[1] (c) the last two calls for course and distance are such that the tract described includes 160 acres in Sections 26 and 27 which are not included in the tract described in exhibit one, which by stipulation is the whole area in controversy, properly described; and (d) the description does not close on the south side.

Notice of the desired change of boundary was posted on March 15, 1952, in accordance with the requirements of § 165.170, par. 1, RSMo (1949), V.A.M.S. No plat of the area was attached, but the realty involved was again described by metes and bounds. The description contained in the notice is somewhat more complete in that the gap between the second and third calls for course and distance is closed, but otherwise it has all the vices of the description contained in the petition which initiated the election.

At the election, the voters of the Purdy District (relator's predecessor) approved the change, and the voters of the Cassville District rejected it. A board of arbitrators, appointed as required by § 165.170, RSMo (1949), V.A.M.S., decided in favor of the Purdy District. Their award included no plat, but described the realty by course and distance precisely as it had been described in the petition for a boundary change. The superintendent of schools transmitted the results of the arbitration to a Mr. England, then county clerk, by letter, describing the award by metes and bounds, and using the description found in the arbitrators' report. No appeal was taken from the decision of the board of arbitrators. It is stipulated that on the basis of these proceedings the tract outlined on exhibit one was transferred to the Purdy District, and was assessed and

---

1. Indicated by the dotted lines at the lower right side of exhibit two, following the quarter-quarter section lines in Section 30, Township 24 North, Range 28 West.

taxed for the benefit of the relator from 1952 through 1965. In 1966, the respondent, of his own volition, assessed and taxed the tract in controversy (exhibit one) for the benefit of the Cassville District.

It is further stipulated that in April 1967, at the request of the Purdy District, another boundary change proposal was submitted to the voters of the Purdy and Cassville Districts, and this proposal involved the northern part of the tract outlined on exhibit one. We are not advised whether the two districts at that time were three or six director districts, and step by step compliance with the applicable statute (either § 162.431 or §§ 162.681 and 162.691, RSMo (1969), V.A.M.S., which were then in effect) is not shown, but no question is raised concerning the regularity of this last boundary change election. Respondent's exhibit 3, submitted here and referred to in the stipulation, is a letter to respondent from a Mr. Paul Welch, stipulated to be relator's superintendent of schools. In this letter, Mr. Welch advises respondent that a board of arbitration "met and voted in favor of the boundary change proposal that was voted on April 4, 1967." The letter goes on to say: "Enclosed is an official description of the land in question." The enclosure states that " * * * the boundary line between said [Purdy and Cassville] School Districts will be as follows:

Beginning at the Northeast corner of the Southwest Quarter (¼), Section Twenty-Three (23), Township Twenty-Four (24), Range Twenty-Eight (28), thence east ¼ mile to the Northwest corner of Northeast Quarter (¼) of the Southeast Quarter (¼) Section Twenty-Three (23), Township Twenty-Four (24), Range Twenty-Eight (28), thence ¼ mile south to the Southwest corner of the Northeast Quarter (¼) of the Southeast Quarter (¼), Section Twenty-Three (23), Township Twenty-Four (24), Range Twenty-Eight (28), thence east ½ mile to the Northwest corner of the Southeast Quarter (¼) of the Southwest Quarter (¼) of Section Twenty-Four (24), Township Twenty-Four (24), Range Twenty-Eight (28), thence South ¼ mile to the Southwest Corner of the Southeast Quarter (¼) of the Southwest Quarter (¼) of Section Twenty-Four (24), Township Twenty-Four (24), Range Twenty-Eight (28), thence east ½ mile to the existing school boundary line at the Southwest Corner of the Southeast Quarter (¼) of the Southeast Quarter (¼) of Section Twenty-Four (24), Township Twenty-Four (24), Range Twenty-Eight (28)."

When this line is plotted, it is seen to be the dotted line dividing the tract outlined on our exhibit one, which is now admittedly the boundary between the relator and the Cassville District. It is stipulated that since 1967 the north part of the area outlined on our exhibit one has been assessed and taxed for the relator's benefit, and that the south part of the tract has been assessed and taxed for the benefit of the Cassville District. In 1968, relator demanded that respondent extend the tax books to include the whole tract (our exhibit one) in the Purdy District. Respondent refused. This action followed.

The trial court based its refusal to issue the peremptory writ upon its conclusion that none of the descriptions used in the April 1952 election was sufficient to identify the land involved and the boundary change was void. On this appeal, the parties have briefed and argued a number of rather technical points to support their respective positions, but in the view we take of the case it is unnecessary to consider and discuss all the contentions presented in detail. The case was presented on stipulated facts. Our duty is simply to determine whether or not the judgment entered is the proper legal conclusion upon the facts so stipulated. Jewel Tea Co. v. City of Carthage, 257 Mo. 383, 388, 165 S.W. 743, 744; Bartlett v. National Finance Corporation, 228 Mo.App. 789, 799, 73 S.W.2d 451, 457 [11]. Precisely, in this case, the question for our decision is whether the trial court erred in refusing a peremptory writ of mandamus. Cf. Browning v. City of Poplar Bluff, Mo.App., 370 S.W.2d 179, 182.

It is elementary, of course, that mandamus does not issue where the right sought to be enforced is doubtful. State ex rel. Phillip v. Public School Retirement System of City of St. Louis, 364 Mo. 395, 405, 262 S.W.2d 569, 573 [1]; State ex rel. University Park Building Corporation v. Henry, Mo.App., 376 S.W.2d 614, 618; State ex rel. Sho-Me Power Corporation v. Hawkins, Mo.App., 337 S.W.2d 441, 443, and the burden is on the relator to show his right to the remedy. State ex rel. Phillip v. Public School Retirement System of City of St. Louis, supra, 364 Mo. at 406, 262 S.W. 2d at 574; Adair Drainage Dist. v. Quincy, O. & K.C. R. Co., 280 Mo. 244, 257, 217 S.W. 70, 74. The relator has not met its burden here. We are well aware that a going school district may have a de facto existence, State ex inf. Taylor ex rel. Borgelt v. Pretended Consolidated School Dist. No. 3, 362 Mo. 249, 253, 240 S.W.2d 946, 948 [3], and that the respondent is in no position to question the regularity or legality of relator's corporate existence, State ex rel. Consolidated School District C–4 of Caldwell County v. Blackwell, Mo.App., 254 S. W.2d 243, 245 [3], but this case was not taken on the alternative writ and return, as were State ex rel. Consolidated School Dist. No. 1, Mississippi and New Madrid Counties v. Jones, 320 Mo. 353, 8 S.W.2d 66, and State ex rel Consolidated School District C–4 of Caldwell County v. Blackwell, supra; in this case it was further stipulated as a fact that in 1967 a boundary change election was held, at the relator's request, involving part of the tract now in question, and that the respondent was informed by one of the relator's officers that the boundary should be where it now is. The relator takes no account of this part of the stipulation in its brief and argument. Even if we assume that the descriptions used in the 1952 election were sufficient to advise the voters where the boundaries would be, should the proposition be adopted, or assume that though the election was void the relator acquired de facto jurisdiction over the disputed area because it was taxed and regarded as part of the Purdy District for many years, the stipulation that one of the relator's officers described the boundary to the respondent as it is now differentiates this case from those in which a ministerial official has sought to dispute the organization or existence of a school district as a defense or bar to the issuance of a writ of mandamus. True, Mr. Welch's authority to certify the decision of the board of arbitration concerning the 1967 change of boundary is not apparent from the face of the record, but in our view his letter, coupled with the stipulation that he was acting as the relator's superintendent, was sufficient to render the relator's right to relief doubtful and preclude the issuance of a peremptory writ.

We need not consider the parties' further and additional points, for example, the relator's claim that the evidence establishes the disputed tract to be part of its territory, or the respondent's assertion that the relator is estopped by Mr. Welch's letter from asserting that the boundary is not where it has now been set. It does appear that the real controversy in this case is: Which of the two school districts properly has jurisdiction over the tract of land plotted on our exhibit one? That controversy cannot be settled on this record, nor for that matter in mandamus. Where two school districts claim jurisdiction over the same territory, as is the case here with the southern part of the tract plotted on exhibit one, the public interest is involved and the rights of the respective districts should be settled in Quo Warranto. State ex inf. Dalton ex rel. Hough v. Eckley, Mo., 347 S.W.2d 704, 707 [2]; Spiking School District v. Purported "Enlarged School District R–11, DeKalb County, Missouri," 362 Mo. 848, 865, 245 S.W.2d 13, 21 [12].

For the reasons indicated, the judgment is affirmed.

TITUS, P. J., and STONE, J., concur.

APPENDIX

BARRY COUNTY

TWP 24 N, R 28 W

EXHIBIT ONE

Scale   2" = 1 mile

N

28 W

Range | Line

| | | | |
|---|---|---|---|
| 15 | 14 | 13 | 18 |
| | | (Purdy District) | |

| 22 | 23 | 24 | 19 |
|---|---|---|---|

| 27 | 26 | 25 | 30 |

| 34 | 35 | 36 | 31 |
|---|---|---|---|
| | | (Cassville District) | |

[A4439]

EXHIBIT TWO

N

29 W

Range Line

| 15 | 14 | 13 | 18 |

NE Corner
NW ¼ NW¼ Sec. 23

NE Corner
NW¼ NE¼ Sec. 24

| 22 | 23 | 24 | 19 |

| 27 | 26 | 25 | 30 |

End
Description

Pt. Beg.

| 34 | 35 | 36 | 31 |

[A4436]